UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **ANGEL DEANN PILATI** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: 3:23-cv-1335-LCB |
| | ) |
| **PLAYSTUDIOS US, LLC,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Angel Deann Pilati sued Playstudios US, LLC, in the Circuit Court of Franklin County, Alabama. After Playstudios removed the case to this Court, Pilati filed a motion to remand. (Doc. 3). Having considered all the filings as well as the argument of counsel at a hearing on the matter, the Court finds that the case is due to be remanded.

### I. Background

This case and four others currently pending before the Court raise the same allegations against various defendants.[1] Each case is nearly identical to a set of nine cases filed in early 2023. Five of those cases were assigned to the undersigned, s*ee*

---

[1] The other four cases are *Seal v. VGW LTD, et al*. 3:23-cv-1295-LCB; *Rice v. Aristocrat Leisure, et al.*, 3:23-cv-1334-LCB; *Mills v. Playtika, Ltd. et al.,* 3:23-cv-1289-LCB; and *Pilati v. Yellow Social Interactive Ltd*. 3:23-cv-1349-LCB.

*Gann v. Huuuge, Inc.*, No. 3:23-cv-00498-LCB, 2023 WL 5202376 (N.D. Ala. Aug. 14, 2023); *McGee v. SpinX Games, Ltd.*, No. 3:23-cv-00777-LCB, 2023 WL 5202377 (N.D. Ala. Aug. 14, 2023); *Mills v. Zynga, Inc.*, No. 3:23-cv-00463-LCB, 2023 WL 5198511 (N.D. Ala. Aug. 11, 2023); *Pilati v. Yellow Soc. Interactive, Ltd.*, 686 F. Supp. 3d 1248, 1249–50 (N.D. Ala. 2023); *Rice v. Aristocrat Leisure, Ltd.*, No. 3:23-cv-00480-LCB, 2023 WL 5198510 (N.D. Ala. Aug. 11, 2023), and four were assigned to Judge Lynwood C. Smith. *See Sornberger v. Sciplay Corp.*, 3:23-cv-00476-CLS (N.D. Ala.); *Seal v. VGW Ltd.*, 3:23-cv-00462-CLS (N.D. Ala.); *Pilati v. Playstudios US LLC*, 3:23-cv-00488-CLS (N.D. Ala.); and *Mills v. Playtika Ltd.*, 3:23-cv-00464-CLS (N.D. Ala.). The Court will refer to these collectively as the "Original Cases."

As they did in the Original Cases, the individual plaintiffs have sued various defendants, all providers of online casino-themed games[2], under Ala. Code § 8-1-150(b) (1975). That statute allows, among other things, "any person" to file a lawsuit to recover money lost on illegal gambling wagers "for the use of" the losing player's wife, children, or next of kin. Four plaintiffs, Gayla Mills, Amy Nicole Seal, Angel Deann Pilati, and Sera Stancil Rice have sued several defendants in two state courts under this statute to recover money allegedly lost by all Alabama residents who have

---

[2] While not relevant for purposes of the motions to remand, the parties dispute whether the games offered by the defendants qualify as illegal gambling under Alabama law.

2

played the defendants' games for the use of those players' wives, children, or next of kin. The defendants in each case removed the action to this Court asserting jurisdiction under various provisions of 28 U.S.C. § 1332. The plaintiffs have all filed motions to remand.

After the Original Cases were removed to this Court, the undersigned remanded each of the cases assigned to him while the plaintiffs in the cases assigned to Judge Smith voluntarily dismissed their complaints a few days later. The procedural events following the remands and voluntary dismissals noted above are a bit different for each case but fall into two categories relevant here. The plaintiffs in the voluntarily dismissed cases assigned to Judge Smith, i.e., *Seal v. VGW Ltd.*, 3:23-cv-00462-CLS (N.D. Ala.); *Pilati v. Playstudios US LLC*, 3:23-cv-00488-CLS (N.D. Ala.); *Mills v. Playtika Ltd.*, 3:23-cv-00464-CLS (N.D. Ala.), refiled new cases in state court in August of 2023. The plaintiffs in the remanded cases filed amended complaints.

Pilati was one of the plaintiffs who voluntarily dismissed one of her original cases and refiled a new case in state court.[3] The only relevant difference is that in her new complaint, Pilati specifically excluded from recovery any Alabamian who lost more than $75,000. Accordingly, the factual allegations and legal theories are

---

[3] Pilati was the plaintiff in two of the Original Cases and is similarly a plaintiff in two of the present cases.

3

essentially the same. As discussed in one of the Original Cases[4], *Pilati v. Yellow Soc. Interactive, Ltd*:

> Gambling has long been illegal in the state of Alabama. "A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." Ala. Code § 13A-12-20(4) (1975). In 1852, the Alabama legislature codified a civil cause of action to recover money paid and lost in gambling endeavors. *Id*. § 8-1-150. The statute reads, in relevant part, as follows:
>
>> (a) All contracts founded in whole or in part on a gambling consideration are void. A person who has paid money or delivered anything of value lost upon any game or wager may recover such money thing, or its value by an action commenced within six months from the time of such payment or delivery.
>>
>> (b) Any person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.
>
> *Id*. § 8-1-150(a)–(b).
>
> Yellow Social, a Gibraltar corporation with its principal place of business in Gibraltar, is in the computer game industry. Specifically, the company develops and markets games that can be played online or via cellphone applications. Several of Yellow Social's products are games of chance, such as those involving virtual slot machines and/or casino themes. In those games, a player initially receives free virtual coins to spend in order to play the game. For example, for Yellow Social's slot-machine games, a player uses coins to "spin" the reel. If the player loses the spin, the coins he wagered are lost. If the player

---

[4] The Memorandum Opinions issued in each of the Original Cases were substantially similar.

wins, he receives more coins. If the player runs out of coins entirely, then he can either stop playing the game or purchase additional coins. In other words, he can buy more playing time.

Many Alabama citizens play Yellow Social's games of chance and have purchased additional playing time. On March 8, 2023, Angel Pilati, an Alabama citizen, filed this action against Yellow Social in the Circuit Court of Franklin County, Alabama, pursuant to Alabama Code § 8-1-150(b), seeking to recover the money lost by Alabama citizens on Yellow Social's games of chance between March 2022 and March 2023. Shortly thereafter, Yellow Social removed the action to this Court, pursuant to 28 U.S.C. §§ 1441, 1446. Yellow Social relied on 28 U.S.C. § 1332 as the grounds for removal, claiming that this Court has subject matter jurisdiction under the statute's diversity of citizenship provision.

*Pilati v. Yellow Soc. Interactive, Ltd.*, 686 F. Supp. 3d 1248, 1250 (N.D. Ala. 2023) (internal citations omitted).

In the present case, Playstudios has again argued that this Court has traditional diversity jurisdiction under 28 U.S.C. § 1332. In its response to Pilati's motion to remand, it also argued that this Court has jurisdiction over the case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. §§ 1332(d)(2) and 1453(b). However, that ground for removal was not raised in the notice of removal.

The Court notes that in responding to the motions to remand in each of the cases now pending, the defendants filed a consolidated response stating:

> Because of the strong similarities between this action and four other actions pending before the Court, the overlap between Plaintiffs' arguments in each case, and the shared bases on which this Court has jurisdiction over these matters, Defendants in all five actions are all filing the same opposition brief to promote efficient resolution of these issues.

5

(Doc. 14).  The Court agrees that the cases all share nearly identical legal issues.[5]

## II. Legal Standard

Federal courts are courts of limited jurisdiction. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). A removing defendant has the burden of establishing the propriety of removal under § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Because of federalism concerns implicated by removal jurisdiction, removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand. *Am. Tobacco Co.*, 168 F.3d at 411; *Whitt v. Sherman*

---

[5] A relevant difference is between the cases that were dismissed and refiled and the remanded cases in which the plaintiffs filed amended complaints.  In the latter class of cases, the plaintiffs argue that remand is appropriate for an additional reason, i.e., that 28 U.S.C. § 1447(d) prohibits reconsideration of a prior remand order.  That argument is not relevant in the present case because Pilati dismissed her original case and refiled anew in state court.

*Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (noting Eleventh Circuit preference for remand where federal jurisdiction not "absolutely clear").

If the alleged basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, the removing defendant must prove: (1) that there is complete diversity of citizenship between the plaintiffs and the defendants; and (2) that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). If the amount in controversy is not apparent from the face of the complaint, the defendant must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds ... the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted).

### III. Grounds for Removal

The defendant argues that removal is proper because the Court has diversity jurisdiction pursuant to 28 U.S.C.§ 1332(a). Playstudios points out that it is a citizen of a different state than Pilati and contends that the amount in controversy exceeds $75,000. While Pilati does not dispute the parties' geographical diversity, she does dispute the amount in controversy. The central argument between the parties as to the amount in controversy is whether the amounts lost by each player in Alabama can be aggregated to reach the $75,000 threshold.[6] In arguing that the amount in controversy is satisfied, the defendants candidly note that the undersigned rejected

---

[6] In her complaint, Pilati specifically excludes any player who lost more than $75,000.

this argument in a related case last year, *Rice v. Aristocrat Leisure, Ltd.*, 2023 WL 5198510 (N.D. Ala. 2023). While the defendant notes its respectful disagreement with that ruling, it does not explicitly argue that the Court should reconsider it here. Nevertheless, the Court sees no reason to depart from its analysis of this issue in *Rice* and similarly finds that the amount in controversy is not met in this case.

However, the defendant does purport to advance a new argument and urges the Court to rely on its "judicial experience and common sense" when evaluating the amount in controversy. *See Merriweather v. Digsby*, 2021 WL 2935936, at *2 (N.D. Ala. July 13, 2021) ("A court 'need not suspend reality or shelve common sense' when evaluating the amount in controversy." (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010))); *Roe*, 613 F.3d at 1062 ("[C]ourts may use their judicial experience and common sense in determining whether the case . . . meets federal jurisdictional requirements."). Playstudios points out that by excluding from her complaint any player who lost more than $75,000, Pilati is excluding from potential relief that portion of the public who was the most injured. According to the defendant, this is contrary to Pilati's assertion that she seeks to enforce a public interest. Playstudios also opines about how Pilati's attorneys are to be compensated and argue that, since Pilati is the only client, then any attorneys' fees can come only from her. Therefore, the reasoning goes, any amount that is paid to counsel is necessarily part of Pilati's award and counts toward the amount in

8

controversy. Since Pilati is seeking recovery of money lost by all players in Alabama, an amount that is indisputably greater than $75,000, the amount in controversy would be satisfied.

Additionally, Playstudios goes through various hypothetical scenarios for how this case may eventually play out. For example, it asserts that there is a possibility that there will be unclaimed funds because, in many instances, it may be impossible to identify the losing player's wife, children, or next of kin. As a result, the defendant argues, "a significant portion of the damages at issue in this case *may* not be returnable to statutorily eligible family members." (Doc. 14 at 23) (emphasis added). The defense also opines that "*if* the case proceeds to the point where a claims or redemption process is required, a *potentially* large portion of the population will *likely* not submit a claim to monies to which they might be entitled." *Id.* (emphasis added). The defendant's answer to these hypothetical questions is that Pilati and her attorneys would keep this unclaimed money and that the amount of unclaimed money would likely be more than $75,000. It also point out that § 8-1-150(b) is silent on these issues.

While these hypotheticals certainly raise valid questions about how cases brought under § 8-1-150(b) will unfold, they do not overcome the well-settled principle that "removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405,

411 (11th Cir. 1999).; *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (noting Eleventh Circuit preference for remand where federal jurisdiction not "absolutely clear").  As evidenced by the defendant's use of the speculative language emphasized above, jurisdiction here is not "absolutely clear."  Given the dearth of caselaw interpreting cases brought under § 8-1-150(b), this Court can only speculate about how an Alabama court would resolve the hypotheticals discussed above.  Accordingly, the case is due to be remanded.

The Court also notes that in its notice of removal, Playstudios raises an argument not advanced by every defendant in their notices of removal.  In a footnote in the section of its notice of removal arguing that the amount in controversy exceeds $75,000, Playstudios argues as follows:

> In her Complaint, Plaintiff attempts to defeat this Court's subject matter jurisdiction by claiming that she "does not seek to recover for the family members of any gambler who lost $75,000 or more during the limitations period." (Ex. A at ¶ 1). However, Plaintiff's effort to defeat jurisdiction by this means fails. Once a defendant has met its burden of establishing the amount in controversy exceeds the threshold minimum (as Playstudios' declaration does here), anything short of Plaintiff submitting a permanent and irrevocable stipulation limiting her total damages to less than $75,000, including a stipulation that Plaintiff will not accept any award of damages that exceeds the requisite jurisdictional amount in controversy, is insufficient. *See Moss v. Voyager Ins. Companies*, 43 F.Supp.2d 1298, 1302-03 (M.D. Ala. 1999); *UBS Fin. Servs., Inc. v. Johnson*, 943 So.2d 118, 120 (Ala. 2006); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir.1996).

(Doc. 1 at 7, n. 2).

The Court first notes that this argument presupposes that Pilati will personally receive some type of monetary award. However, as noted above, that conclusion is speculative. Additionally, the cases cited in support of that assertion are distinguishable. In each of those cases, the plaintiffs clearly sought a monetary award for themselves, and none of the cases were brought under statutes like § 8-1-150(b) seeking numerous individual awards for unnamed parties. Accordingly, this argument does not change the Court's conclusion.

Finally, as noted in Section I of this opinion, the defendants argued in their response brief that CAFA also supported federal jurisdiction over this case. However, that ground was not raised in the notice of removal, and the Court questions whether the issue is properly before it. 28 U.S.C. § 1446(a) provides that defendants seeking to remove a case to federal court "shall file … a notice of removal … containing a short and plain statement of the grounds for removal …." Nevertheless, it is unnecessary to make that determination because the Court lacks jurisdiction under CAFA for the reasons stated in the memorandum opinion issued contemporaneously in *Mills v. Playtika, Ltd., et al.*, 3:23-cv-1289-LCB.

## IV.  Conclusion

For the foregoing reasons, the Court finds that it does not have subject-matter jurisdiction over this case under 28 U.S.C. § 1332(a). Accordingly, Pilati's motion

to remand (Doc. 3) is **GRANTED**, and this case is hereby remanded to the Circuit Court of Franklin County, Alabama.

    **DONE** and **ORDERED** January 7, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE